that the policy was forfeited by the nonpayment of the premium at
those dates; he accepted in many instances the grace of the com-
pany in the re-establishment of the policy, by paying those premiums,
under certain conditions, after the policy had lapsed; and the custom
and dealing between the parties, under their interpretation of the
terms of the contract, shows that it had lapsed before his death,
and that it could not be reinstated, and the company was absolved
from liability upon it, at the time the assured died; for he was in-
capable of performing those conditions under which alone the policy
could have been re-established and made enforceable.

I think, therefore, that the plaintiff was not entitled to recover on
this policy, and that the judgment should be reversed, and a new trial
ordered, with costs to appellant to abide the event.

---

### HARRIS v. SECOND AVE. R. CO.

(Supreme Court, Appellate Division. First Department. February 9, 1900.)

STREET RAILROADS—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—
VERDICT—EVIDENCE—APPEAL.

Where plaintiff's testimony that she received the injuries complained of
in attempting to step from a street car after it had stopped was contra-
dicted by three disinterested parties and the employés, all eyewitnesses to
the accident, who testified that the car was still moving when plaintiff at-
tempted to alight, a verdict for plaintiff will be set aside on appeal, as
against a clear weight of evidence.

Appeal from trial term, New York county.

Action by Marie Harris against the Second Avenue Railroad Com-
pany. From a judgment for plaintiff, and an order denying a mo-
tion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
McLAUGHLIN, and INGRAHAM, JJ.

Edward D. O'Brien, for appellant.
Julius J. Frank, for respondent.

INGRAHAM, J. The only question raised by the defendant on
this appeal is that the verdict should be set aside as against the
weight of evidence. The plaintiff testified that she was a passen-
ger upon one of the defendant's cars; that she told the conductor
she wished a transfer at Stanton street; that the conductor gave
her a transfer ticket about two blocks from Stanton street. "When
the car had stopped, I got up on one foot on the stoop, just put
the other foot on the floor. When the whistle blowed, the car went,
and I was lying on the floor. When I say I put one foot on the
stoop I mean upon the step that runs alongside of the open car. I
got off on Stanton street, on the east side. That was the left-hand
side of the car moving forward. I was sitting like that [indicat-
ing] on the corner of the car,—on the corner seat,—and I got up,
put my foot down like that [indicating] on the stoop, and just went
to put the other foot down, and then I fell off. I had hold of the
handle that way [indicating]. Just when I wanted to put down the

other foot in my attempt to get off, the car started." The accident happened on July 3, 1897. The witness was seated on the second seat from the front, the car being an open car. There was a single track in Allen street, and plaintiff had ridden on this line of cars frequently, and knew Stanton street to be a transfer station. There were but few passengers in the car, and it did not appear that any other passenger wished to alight at this station. The conductor was on the back platform, where he could see the plaintiff; and the plaintiff stated that, when she started to get off, the car was across Stanton street. The witness stated that she could not tell whether the car stopped a minute or two minutes or three minutes, but she was sure the car stopped. This story of the plaintiff is entirely uncorroborated by any witness. She says that the car stopped across Stanton street. There was a line of horse cars running through Stanton street, and thus the car, had it stopped there, would have blocked the street. Stanton street being a transfer station, the cars always stop there, with or without signal; and to sustain this verdict we must find that the car did stop right across Stanton street, and that, while the plaintiff was in the act of getting out, the conductor signaled the car to start, and it started, throwing the plaintiff out. Thus, without evidence of any kind to show that the conductor was not attending to his duty, or that anything happened to distract his attention, the plaintiff's story is that, when one passenger was about to alight, with one foot upon the step of the car, the conductor deliberately gave the signal to start before she had got her foot to the ground. The story, as thus told, is extremely improbable. It is improbable that the car came to a full stop across Stanton street. It is improbable that the conductor started the car while the plaintiff was getting off, in full view, and when there was nothing to distract his attention; nothing to cause him to thus expose a passenger to imminent danger. The defendant called three witnesses, who seem to have been disinterested, and the conductor and driver of the car, all of whom swore positively that they saw the accident, saw the car slowly moving, and that, just as it was crossing the Stanton street track, the plaintiff stepped off the car and fell in the street; that, after the plaintiff fell off, the car moved six or seven feet before it stopped, and it stopped on the south corner of Stanton and Allen streets. The story that these witnesses told was not shaken by their cross-examination, and, while there are slight inaccuracies in their testimony, there is nothing to throw any doubt upon the truth of the story that they told. We have thus an improbable story told by the plaintiff, contradicted by that of five witnesses, three of whom, so far as appears, are entirely disinterested. Immediately after the occurrence, the plaintiff, who was quite severely injured, fainted away, and apparently suffered considerable pain. Her evidence shows that she was impressed with the fact that it was necessary for her to prove that the car had stopped before she attempted to alight, to enable her to recover; and it is certainly very much more probable that she is mistaken in her statement that the car stopped than that all of the other witnesses should have been mistaken. We think that a case

is here presented that requires the interference of this court, and that a new trial should be granted. The rule to be adopted in cases of this character is stated in the case of Pierce v. Railroad Co., 21 App. Div. 429, 47 N. Y. Supp. 541, as follows:

"It is easily conceivable, and it is frequently the case, that the action may be of such a nature, and the plaintiff's case may be sustained by so much evidence, that, if there were no conflicting testimony, the right of the plaintiff to recover could not be denied. Where that is the plaintiff's case, and the defendant presents testimony tending to contradict or overthrow it, the case must go to the jury; * * * but it does not follow that the verdict of the jury in such cases is final. The question is still left to be determined whether the verdict has been found in favor of that party who has produced a preponderance of the testimony, or whether the testimony of the defeated party is so excessively preponderating that the court must say that the verdict was the result of passion, prejudice, or mistake on the part of the jury, and that the ends of justice require that the case should be submitted to another jury."

This certainly is such a case. No one could read this testimony without being satisfied that the evidence introduced on the part of the defendant was "excessively preponderating," and, considering the improbability of the truth of the plaintiff's story, the conviction is forced upon the mind that, when the plaintiff attempted to alight, the car had not come to a stop, and that the accident resulted solely from the attempt of the plaintiff to get off the car while it was in motion.

It follows that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.