character was created, there must be evidence of such acts done or words used on the part of Mrs. Huf that the intention to create it arises as a necessary inference therefrom and is unequivocal. Wadd v. Hazelton, 137 N. Y. 215, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707. There must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that this was her intention. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531. The evidence here falls far short of these requirements. While the delivery of the bankbook might pass title to the moneys on deposit, even for such purpose, the book must have been delivered with that intent. The evidence does not show that the purpose of its delivery was to transfer title to Thoma for the carrying out of any trust, or indeed for any purpose other than to draw from or deposit moneys with the defendant on her account. The testimony of Thoma and his brother shows, if it is to be believed, that there was a desire and expectation on the part of plaintiff's intestate that Thoma and his wife should have the moneys on deposit after her death. Giving to this testimony all that can be claimed from it, it falls far short of establishing, by such clear and satisfactory proof as is required, that Mrs. Huf actually did make a gift of it to Thoma or his wife. Whatever possession Thoma may have had of the bankbook must be presumed, in the absence of evidence to the contrary, to have been in pursuance of his power of attorney. There is no proof that the bankbook was delivered accompanied by words showing an intent to pass present title to the moneys, nor was there proof that it was delivered in such manner as to pass title after the donor's death. Thoma is a highly interested witness, and the testimony given by him upon the trial was contradicted by affidavits which he had voluntarily made, to the effect that he was a mere business agent of the deceased, and had no other interest in the moneys, except that he supposed when he drew the money that he had a right to do so. His brother did not testify that the bankbook was delivered by the intestate when she made her declarations that the money belonged to Thoma, but rather that the book was and remained in her possession. But, even if the technical requisites of a gift had been proved, the evidence is so unsatisfactory, and Thoma's testimony so contradictory and apparently unreliable, that justice requires there should be another trial, and for that reason the motion for a new trial should have been granted.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellant to abide event. All concur.

---

(109 App. Div. 28.)

VONDERAHE v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 17, 1905.)

CARRIERS—INJURY TO PASSENGER—SUFFICIENCY OF EVIDENCE.

Evidence examined, and *held* insufficient to sustain a verdict for plaintiff in an action for injuries alleged to have been caused by the sudden starting of a street car from which she was alighting.

Appeal from Trial Term, New York County.

Action by Louisa Vonderahe against the Metropolitan Street Rail-

way Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Richard H. Ames, for appellant.

H. Lionel Kringel, for respondent.

McLAUGHLIN, J. This is the ordinary negligence action to recover damages for personal injuries. The plaintiff alleged in her complaint that on the 6th of August, 1899, she was a passenger on one of the defendant's southbound Eighth avenue cars; that just before the car reached 88th street she indicated to the conductor her desire to have it stopped there and let her off; that the car was not stopped at that point, but when it reached 87th street it was stopped, and she attempted to alight; that while she was in the act of doing so, having one foot on the running board and one foot in the street, without warning to her the car was suddenly started, and she was thrown to the street, thus sustaining the injuries of which she complained. The answer denied the material allegations of the complaint. At the trial, in support of the allegations of the complaint, plaintiff testified that she attempted to get off the car at 88th street, but the conductor did not stop there, and "took me down to 87th street." She was then asked:

"Q. At 87th street, what, if anything, did you do or say before you started to get off? A. The conductor rang the bell twice, and then I started. I had one foot on the street and one foot on the step when the conductor rang the bell once and started and threw me out. Before I started to get off this car, the car was standing still."

She did not testify that the car was standing still at the time she attempted to step from it. What she stated was that, when she had one foot on the street and one foot on the step of the car, the bell was rung once, which it is a matter of common knowledge is the signal for the car to stop and two bells for it to start. She was corroborated in some respects by a colored hallboy (Lightfoot), employed in the Cascade apartment house, located on the southwest corner of 87th street and Eighth avenue. He testified he was standing in the hall of the apartment and saw the accident. From the place where he stood, he could see half way up and down the block. "That the car came down and stopped. The lady was getting off, and as she was getting off, and she had one foot on the ground, the car started and she fell." That after the plaintiff was injured she was carried into the hall where he was. That he did not ask for her name, "but she told me her name, and I remember it all this time, certainly. This accident was in 1899—five years ago." To meet the testimony of the plaintiff and her one witness the defendant produced five witnesses (three passengers upon the car and the other two the conductor and motorman) who contradicted the plaintiff and her witness as to the starting of the car while plaintiff was getting off, four of whom testified that she stepped off before the car had come to a full stop and while it was in motion. Thus, defendant's witness Mason testified that he was a passenger on the car, and immediately preceding the plaintiff's injury he was sitting two seats in front of her; that she got out of her seat while the

car was moving, and that the conductor "called to her to wait until the car stopped;" that the car was then near 87th street, running slowly; that she did not wait, but stepped off while the car was moving, with her back towards the front end of it; that the car was running very slowly at the time; that it did not go but a few feet after she stepped off; that after the accident he voluntarily gave his name to the conductor. The witness Scommodau, another passenger on the car, testified that he was within five or six feet of the plaintiff when she fell; that when the car was between the north and south crossing of 87th street she asked the conductor to stop, and, as it approached the south crossing, she stepped to the running board, and then stepped off before the car had stopped; that the car at the time was running very slowly, and stopped after going a few feet, or, to use the language of the witness, "the car stopped within two seats." The witness Siebert, another passenger, testified that he was sitting in the second seat from the rear of the car; that his attention was attracted to the plaintiff by hearing the conductor tell her to wait until the car had stopped; that he saw her step from the car, and it was then moving very slowly; that after she stepped off she fell, and the car was stopped within five or six feet; and that he voluntarily gave his name to the conductor after the accident. These three witnesses were apparently all disinterested, and their testimony is corroborated by Gunhouse, the conductor of the car, who at the time of the trial was in business for himself, and in no way connected with the defendant, and by the motorman, Wesp, who at the time of the trial was connected with the Fire Department of the city of New York, and in no way connected with the defendant.

Taking the testimony altogether, I am of the opinion that the plaintiff did not sustain the burden of establishing by a fair preponderance of evidence that her injuries were produced solely by the negligence of the defendant, and that the verdict in her favor is against the weight of evidence. The accident occurred in broad daylight. There is not a suggestion made but what the conductor was paying proper attention to his car, or that his attention was distracted in any way; nor did the plaintiff contradict the statement of the defendant's witnesses Mason and Siebert to the effect that the conductor of the car told her to wait until the car had stopped. It seems improbable, therefore, under such circumstances, as suggested in Harris v. Second Avenue Railroad Co., 48 App. Div. 118, 62 N. Y. Supp. 562, that the conductor would have started his car while the plaintiff, an elderly woman, was getting off, when there was nothing to cause him to thus expose her to danger. This improbability is increased when she did not produce as a witness in her favor a single passenger on the car to corroborate her in any respect, and the defendant produced three, two of whom voluntarily gave their names to the conductor (Clancy v. Yonkers R. R. Co., 88 App. Div. 612, 84 N. Y. Supp. 789) and all of whom united in saying that she stepped off while the car was in motion. Then, too, the testimony of the plaintiff's witness Lightfoot is quite improbable in so far as he states the position plaintiff was in when she attempted to alight. He was standing in the hall leading into the apartment, several feet away from where the plaintiff fell. No explanation was given as to how he came to see what he claims to have seen, nor what there was, if anything, to attract

his attention to the plaintiff so he could, five years afterwards, describe minutely her position at and immediately prior to the accident.

No one, as it seems to me, can read the entire testimony without being satisfied that the weight of evidence fairly tended to establish that the injury which the plaintiff received was due to her own negligence, that the car had not come to a stop when she attempted to alight, and that her injuries resulted solely from the attempt on her part to get off the car while it was in motion. The case is brought within the rule laid down in Pierce v. Metropolitan St. Ry. Co., 21 App. Div. 427, 47 N. Y. Supp. 540, cited with approval in Harris v. Second Ave. R. R. Co., supra.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and PATTERSON and LAUGHLIN, JJ., concur. INGRAHAM, J., concurs in result.